Dennis SLOMBA, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00202–CR.

Court of Appeals of Texas, Texarkana.

Submitted July 13, 1999.

Decided July 14, 1999.

Discretionary Review Refused Oct. 13, 1999.

John H. Tatum, Lufkin, for appellant.

Clyde M. Herrington, District Attorney, Lufkin, for appellees.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

OPINION

Opinion by Justice ROSS.

Dennis Slomba was indicted for the offense of criminal attempt at aggravated robbery. In a trial before the court, he was found guilty of the lesser offense of criminal attempt at robbery. Punishment was assessed at imprisonment for ten years. Slomba appeals, contending that the evidence supporting his conviction is legally and factually insufficient.

In reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *Rojas v. State*, 986 S.W.2d 241, 246–47 (Tex.Crim. App.1998); *Barnes v. State*, 876 S.W.2d 316, 321–22 (Tex.Crim.App.1994). In reviewing the factual sufficiency of the evidence, all the evidence is viewed without the prism of "in the light most favorable to the prosecution," and the verdict is set aside only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Rojas*, 986 S.W.2d at 247 (quoting *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996));

*Stone v. State,* 823 S.W.2d 375, 381 (Tex. App.-Austin 1992, pet. ref'd, untimely filed). "A clearly wrong and unjust verdict is 'manifestly unjust,' 'shocks the conscience,' or 'clearly demonstrates bias.'" *Rojas,* 986 S.W.2d at 247; *Santellan v. State,* 939 S.W.2d 155, 165 (Tex.Crim.App. 1997). It is assumed that the evidence is legally sufficient to support the conviction, and the appellate court then reviews the fact finder's weighing of the evidence and is authorized to disagree with the jury's determination. *Clewis,* 922 S.W.2d at 133; *Stone,* 823 S.W.2d at 381. The reviewing court must not substitute its judgment for that of the fact finder; the review must be appropriately deferential. *Clewis,* 922 S.W.2d at 133.

Under the Texas Penal Code, "criminal attempt" is described as follows:

(a) A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.

. . . .

(d) An offense under this section is one category lower than the offense attempted, . . . .

TEX. PEN.CODE ANN. § 15.01 (Vernon 1994). "Robbery" is described as follows:

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

. . . .

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

(b) An offense under this section is a felony of the second degree.

TEX. PEN.CODE ANN. § 29.02 (Vernon 1994).

Chapter 31 of the Penal Code describes "theft" (as relevant to this case) as follows:

(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property.

(b) Appropriation of property is unlawful if:

(1) it is without the owner's effective consent; . . . .

TEX. PEN.CODE ANN. § 31.03(a), (b) (Vernon 1994).

All the evidence in this case came from two witnesses called by the State. Susan Summers, an employee of Texas State Bank in Lufkin, was the alleged victim. She testified that on the morning in question, she arrived at the bank between 7:15 and 7:20 and was the first employee there. She parked her car just outside the bank's back door marked "Employees Only" and exited her car carrying several things, including her purse and keys to the bank. After she unlocked the door and pulled it open, a man dressed totally in black ("from head to toe") emerged from behind a nearby dumpster and ran full force toward her "kind of hunkered down." She could not see if he had a gun in his hands because he had his arms "kind of backwards." He was almost upon her when she slammed the door shut and locked it with a deadbolt. She then ran to a nearby office and immediately dialed 9–1–1 to alert the police, who were on the scene "[w]ithin a matter of a couple of minutes."

Lufkin police officer Bill Murphy was the other witness. He testified that on the date in question, at about 7:20 or 7:25 a.m., a call went out from the police dispatcher concerning a robbery in progress at the Texas State Bank. He was about two-tenths of a mile from the bank at the time. The dispatcher described the suspect as a black male and stated that he was still in the area, believed to be behind a building. Murphy arrived on the scene quickly and found Slomba "crouched down" at the north end of a movie theater about fifty feet from the bank. Slomba was looking around the corner of the building toward the parking lot. Slomba did not immediately respond to Officer Murphy's command to put his hands on the wall but "fiddled around for a minute" as if he was putting something in his pocket, i.e., "[h]e

just wouldn't show me his hands." After the third command from Murphy to put his hands on the wall, Slomba complied. The police dispatcher informed Murphy that it took forty-one seconds from the moment Murphy reported he was in the area until he had Slomba in custody. A search of Slomba's person revealed a loaded .25 caliber automatic pistol in his right rear pocket. A green bag lying about six inches from Slomba's feet, with no identification on it, contained a pair of black gloves; a pullover-type mask/hood "black in color with white face," a black pullover-type jacket with a hood, and a nine millimeter look-alike toy pistol.

■ The State relies upon this circumstantial evidence to support Slomba's conviction for criminal attempt at robbery. The State may prove its case by direct or circumstantial evidence so long as it shoulders its burden of proving all elements of the charged offense beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 623 (Tex.Crim.App.1997). The standard for appellate review of the evidence is the same for direct and circumstantial evidence. *McDuff*, 939 S.W.2d at 623–24; *Martinez v. State*, 880 S.W.2d 72, 77 (Tex. App.-Texarkana 1994, no pet.).

■ The applicable statutes require Slomba to have acted with intent. Intent is usually established by circumstantial evidence, and is usually inferred from the accused's acts, words, and conduct. *Hilton v. State*, 975 S.W.2d 788, 791 (Tex. App.-Texarkana 1998, pet. ref'd). As recently stated by the Texas Court of Criminal Appeals:

> Mental states are almost always inferred from acts and words. "Mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs." A defendant's mental state "was concealed within his own mind and can only be determined from his words, acts, and conduct."

*Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim.App.1998) (citations omitted).

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. First, it was reasonable for the court to find from the circumstances, specifically the actor's acts, that the actor intended to commit theft, i.e., that the actor intended to deprive Summers of either her own property or the bank's property under her control. Based on this evidence, the court could also find beyond a reasonable doubt the elements of robbery, i.e., that in the course of committing theft, the actor intended to obtain or maintain control of this property and that the actor intentionally or knowingly placed Summers in fear of imminent bodily injury or death. A rational trier of fact could have found from the evidence that the actor, dressed almost entirely in a black disguise and hiding behind a dumpster, rushed Summers at an early morning hour while she was unlocking the bank's back door, and intended to place her in fear of imminent bodily injury or death in order to facilitate a theft. Summers testified, "I had fear for my life because I had access to so much money and stuff, and I immediately slammed the door on him." Moreover, based on this same evidence, the fact finder could have found that the actor acted with the specific intent to commit the offense of robbery and did an act amounting to more than mere preparation, rushing at Summers in an attempt to bring the intended robbery to fruition. Finally, it is reasonable, based on the circumstantial evidence, that the actor was Slomba, the person found "crouched down" around a corner within feet of the bank only seconds after the attempted robbery. The police found a loaded pistol on his person, and a green bag containing predominantly black clothing was within his reach and control. We find the evidence legally sufficient.

Even if the evidence in this case is viewed without the prism of in the light most favorable to the prosecution, the court's verdict is not clearly wrong or unjust. It is not manifestly unjust, nor does

it shock the conscience or clearly demonstrate bias. We also find the evidence to be factually sufficient.

The judgment of conviction is affirmed.